IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| JASON HYDE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-cv-34 |
| | § | |
| BKD CONSULTING, LLC and BRIAN K. | § | JURY TRIAL REQUESTED |
| DITTO, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Jason Hyde ("Plaintiff") files this Complaint against BKD Consulting, LLC ("BKD Consulting") and Brian K. Ditto ("Ditto") (collectively "Defendants"), showing in support as follows:

### I.      NATURE OF THE CASE

1.      This is a civil action brought by Plaintiff pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "FLSA") for Defendants' failure to pay Plaintiff time and one-half his regular rate of pay for all hours worked over 40 during each seven-day workweek due to improper wage deductions and unpaid compensable travel time.

2.      Plaintiff also brings a civil action against Defendants pursuant to the FLSA's minimum wage provisions due to improper wage deductions that reduced his actual hourly rate of pay to less than $7.25 per hour in several workweeks.

3.      Plaintiff seeks all damages available under the FLSA including back overtime wages, unpaid minimum wages, liquidated damages, legal fees, costs, and post-judgment interest.

## II.     THE PARTIES, JURISDICTION, AND VENUE

**A.     Plaintiff Jason Hyde**

4.     Plaintiff is a natural person who resides in Carlsbad, Texas. He has standing to file this lawsuit.

**B.     Defendant BKD Consulting, LLC**

5.     BKD Consulting is a domestic limited liability company.

6.     At times relevant to this lawsuit, BKD Consulting has been an "enterprise engaged in commerce" as defined by the FLSA.

7.     At times relevant to this lawsuit, BKD Consulting employed two or more employees.

8.     At times relevant to this lawsuit, BKD Consulting employed two or more employees who engaged in commerce and/or who handled, sold, or otherwise worked on goods and/or materials that have been moved in and/or produced for commerce by any person.

9.     For example, BKD Consulting employed two or more employees who regularly handled, sold, and/or otherwise worked on goods and/or materials in their daily work that are/were moved in and/or produced for commerce. Examples of such goods and/or materials include tools, phones, construction equipment (such as excavators), vehicles, fuel, and personal protection equipment.

10.    On information and belief, at times relevant, BKD Consulting has had annual gross sales or business volume in excess of $500,000.

11.    BKD Consulting may be served with summons through its registered agent, Brian K. Ditto, 580 North 4th Street, Wills Point, Texas 75169.

C.      **Defendant Brian K. Ditto**

12.      Ditto is a natural person.

13.      Ditto has been the sole owner, officer, and member of BKD Consulting at all times relevant.

14.      Ditto possessed the power to hire and fire employees of BKD Consulting, including Plaintiff.

15.      Ditto supervised and controlled work schedules for employees of BKD Consulting, including Plaintiff.

16.      Ditto controlled the conditions of employment for employees of BKD Consulting, including Plaintiff.

17.      Ditto determined the rate and method of payment for employees of BKD Consulting, including Plaintiff.

18.      Ditto maintained employment records of employees of BKD Consulting, including Plaintiff.

19.      Ditto may be served with summons at 580 North 4th Street, Wills Point, Texas 75169.

D.      **Jurisdiction and Venue**

20.      Plaintiff incorporates the preceding paragraphs and the factual background section below by reference as if set forth fully in this section.

21.      The Court has personal jurisdiction over Defendants based on both general and specific jurisdiction.

22.      During all times relevant to this lawsuit, Defendants have done business in the State of Texas and continue to do business in the State of Texas.

23.     The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiff bases his claims on federal law, namely the FLSA.

24.     Venue is proper in this Court because Plaintiff regularly worked for Defendants within the boundaries of the Pecos Division of the United States District Court for the Western District of Texas. Additionally, the most recent improper wage deductions (explained in detail in the factual background section below) that resulted in an underpayment of FLSA overtime wages and minimum wages owed occurred relative to work Plaintiff performed in Winkler County, Texas, which is within the boundaries of the Pecos Division of the United States District Court for the Western District of Texas.

### III.   FACTUAL BACKGROUND

25.     During Plaintiff's employment with Defendants, BKD Consulting provided oilfield related services to various customers with operations in Texas and New Mexico.

26.     Plaintiff was employed by BKD Consulting and/or Ditto from approximately 2018 to approximately October 24, 2020. Plaintiff's job title was solids control technician. Plaintiff operated equipment, such as excavators, for Defendants in oilfield related operations.

27.     Plaintiff was hired by Ditto. Plaintiff's rates and methods of pay were determined by Ditto. Plaintiff's job responsibilities and work schedules were determined by Ditto.

28.     Plaintiff performed work for Defendants in Texas and New Mexico.

29.     Plaintiff's work for Defendants in Texas was primarily in the Permian Basin area of West Texas and included work in the following Texas counties – Winkler, Odessa, and Midland.

30.     Plaintiff's work for Defendants in New Mexico was primarily in areas that were near the Texas and New Mexico border. Plaintiff routinely and regularly performed work for Defendants in New Mexico.

31.     Plaintiff was paid on an hourly basis relative to his work for Defendants.

32.     Plaintiff's hourly rate of pay varied between approximately $13.00 per hour near the beginning of his employment with Defendants and approximately $10.00 per hour near the end of his employment with Defendants. Plaintiff's set hourly rate of pay was $10.00 in at least the last five months of his employment with Defendants.

33.     Defendants provided Plaintiff with a per diem of approximately $120.00 per day during a hitch.

34.     Additionally, Defendants generally reimbursed Plaintiff for mileage expenses at .54 cents per mile up to a maximum of 150 miles from Plaintiff's home to the oilfield work location and back. However, Plaintiff frequently drove farther than the mileage for which Defendants reimbursed him. For example, Plaintiff's work for Defendants in and around Wink, Texas and in New Mexico was farther than 150 miles from Plaintiff's home in Carlsbad, Texas.

35.     Plaintiff was generally paid on a weekly basis.

36.     Plaintiff frequently worked hitches of 20 days on and 10 days off for Defendants.

37.     During the 20 days on (or such other time that Plaintiff was assigned work at a job location), Plaintiff stayed overnight away from his home. That travel from his home to locations in Texas and New Mexico was generally performed the day before Plaintiff's hitch began. The return home travel frequently occurred the day after a hitch ended. That travel routinely cut across Plaintiff's normal working hours during working days and/or nonworking days. Such travel is compensable time pursuant to the FLSA. However, Defendants did not count that travel time as compensable time or otherwise pay Plaintiff wages for that compensable travel time. The failure of Defendants to count that travel time as compensable time resulted in an underpayment of the FLSA overtime wages owed Plaintiff as Plaintiff routinely and regularly worked more than 40 hours per seven-day workweek for Defendants exclusive of that unpaid travel time.

38.     In 2020, Defendants alleged that Plaintiff damaged their equipment while performing his work in close proximity to Wink, Texas. Defendants unilaterally decided, without Plaintiff's consent, to deduct $1,200.00 from Plaintiff's wages by deducting $300.00 from four different paychecks covering four different pay periods. Such deductions are contrary to the FLSA's free and clear and no kickback rule. *See* 29 C.F.R. § 531.35. In addition to resulting in FLSA overtime wage and minimum wage violations, such deductions were also contrary to Texas law[1] as they were not made pursuant to an order from a court of competent jurisdiction, were not authorized by state or federal law, and were not made pursuant to written authorization from Plaintiff for a lawful purpose.

39.     The first $300.00 deduction relative to the alleged equipment damage near Wink, Texas was from Plaintiff's September 8, 2020 paycheck which covered work dates between August 30, 2020 to September 5, 2020. Plaintiff's hourly rate of pay at that time was $10.00. Exclusive of unpaid travel time, Plaintiff's earnings statement for that workweek shows 40 straight time hours worked and 47.3 overtime hours worked (87.3 total hours exclusive of compensable travel time). Plaintiff's straight-time wages for that workweek were $400.00 and his overtime wages for that workweek were $712.50. The $300.00 deduction from those wages resulted in Plaintiff's effective hourly rate of pay being reduced to $6.56 per hour worked, which is a violation of the FLSA's minimum wage provisions. That $300.00 deduction also cut into overtime pay that Plaintiff was owed under the FLSA's overtime pay provisions.

40.     The second $300.00 deduction for alleged equipment damage near Wink, Texas was from Plaintiff's September 28, 2020 paycheck which covered work dates between September 24, 2020 to September 30, 2020. Plaintiff's hourly rate of pay at that time was $10.00. Exclusive

[1] Tex. Lab. Code § 61.018.

of unpaid travel time, Plaintiff's earnings statement for that workweek shows 40 straight time hours worked and 47.3 overtime hours worked (87.3 total hours exclusive of compensable travel time). Plaintiff's straight-time wages for that workweek were $400.00 and his overtime wages for that workweek were $712.50. The $300.00 deducted from those wages resulted in Plaintiff's effective hourly rate of pay being reduced to $6.56 per hour worked, which is a violation of the FLSA's minimum wage provisions. That $300.00 deduction also cut into overtime pay that Plaintiff was owed under the FLSA's overtime pay provisions.

41.     The third $300.00 deduction for alleged equipment damage near Wink, Texas was from Plaintiff's October 5, 2020 paycheck which covered work dates between September 24, 2020 to September 30, 2020. Plaintiff's hourly rate of pay at that time was $10.00. Exclusive of unpaid travel time, Plaintiff's earnings statement for that workweek shows 40 straight time hours worked and 47.3 overtime hours worked (87.3 total hours exclusive of compensable travel time). Plaintiff's straight-time wages for that workweek were $400.00 and his overtime wages for that workweek were $712.50. The $300.00 deducted from those wages resulted in Plaintiff's effective hourly rate of pay being reduced to $6.56 per hour worked, which is a violation of the FLSA's minimum wage provisions. That $300.00 deduction also cut into overtime pay that Plaintiff was owed under the FLSA's overtime pay provisions.

42.     The fourth $300.00 deduction for alleged equipment damage near Wink, Texas was from Plaintiff's October 12, 2020 paycheck which covered work dates between October 4, 2020 to October 10, 2020. Plaintiff's hourly rate of pay at that time was $10.00. Exclusive of unpaid travel time, Plaintiff's earnings statement for that workweek shows 25 straight time hours worked and no overtime hours worked (25 total hours exclusive of compensable travel time). Plaintiff's straight-time wages for that workweek were $250.00. The $300.00 deducted from those wages (in

addition to Plaintiff's per diem ($240.00) and mileage reimbursement ($81.00)) resulted in Plaintiff being paid no wages for that week worked and Plaintiff's effective hourly rate of pay being reduced to at least -$2.00 per hour worked (again, Defendants took that shortage from per diem and expense reimbursements it owed Plaintiff), which is a violation of the FLSA's minimum wage provisions.

43.     Plaintiff believes there are other pay deductions Defendants improperly made for allegedly damaged equipment or property but he does not currently possess pay records relative to same. Plaintiff seeks all FLSA minimum wage related damages and/or FLSA overtime wage related damages for any and all improper deductions from his wages and/or expense reimbursements by Defendants.

44.     Plaintiff routinely worked more than 40 hours per seven-day workweek for Defendants. However, Defendants did not pay Plaintiff time and one-half his regular rate of pay for each and every hour he worked over 40 per workweek in all workweeks during Plaintiff's employment with Defendants.

45.     When dividing the total wages paid to Plaintiff for a workweek by all hours worked per corresponding workweek, Defendants failed to pay Plaintiff, free and clear, at least the FLSA's minimum hourly wage of $7.25 for all hours worked in each and every workweek during Plaintiff's employment with Defendants.

## IV.     CONTROLLING LEGAL RULES

46.     The FLSA states that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess

of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

47.     The FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at … not less than … $7.25 an hour." 29 U.S.C. § 206(a)(1)(C).

48.     "Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties. The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days." 29 C.F.R. § 785.39.

49.     Under the FLSA's Continuous Workday Rule, "[p]eriods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked." 29 C.F.R. § 790.6.

50.     An employee is employed for purposes of the FLSA if the employer has "knowledge, actual or constructive, that [s]he was working." *Mack v. Avara Cmty. Health Servs.*, No. 3:13-CV-1976-P, 2016 U.S. Dist. LEXIS 129266, at *3-4 (N.D. Tex. Feb. 5, 2016) (*citing Newton,* 47 F.3d at 748). "Constructive knowledge exists if by exercising reasonable diligence an employer would become aware that an employee is working overtime." *Von Friewalde v. Boeing Aero. Operations, Inc.*, 339 F. App'x 448, 455 (5th Cir. 2009) (quotations and citation omitted).

51.     "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough.

Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13; *accord Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (same).

52.     Federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. § 516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

53.     The FLSA requires wage payments to employees to be "free and clear." *See* 29 C.F.R. § 531.35 ("Whether in cash or in facilities, wages cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or free and clear. The wage requirements of the [FLSA] will not be met where the employee kicks-back directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the kick-back is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the [FLSA] in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the [FLSA]." (quotations omitted)).

54. "An employer may not withhold or divert any part of an employee's wages unless the employer: (1) is ordered to do so by a court of competent jurisdiction; (2) is authorized to do so by state or federal law; or (3) has written authorization from the employee to deduct part of the wages for a lawful purpose." Tex. Lab. Code § 61.018.

55. The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee … ." 29 U.S.C. § 207(e).

56. With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108; *accord Allen v. Board of Pub. Educ. For Bibb Cty.*, 495 F. 3d 1306, 1311 (11th Cir. 2007); *see also Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2009).

57. "Any employer who violates the provisions of [29 U.S.C. § 206] or [29 U.S.C. § 207] … shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. … The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

58. "The FLSA defines an employee as any individual employed by an employer." *Lovo v. Express Courier Intl., Inc.*, 4:16-CV-853-Y, 2019 WL 387367, at *2 (N.D. Tex. Jan. 30, 2019) (citing 29 U.S.C. § 203(e)(1) (brackets and quotations omitted)). "Employer includes any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* (citing 29 U.S.C. § 203(d)). "[E]mploy means to suffer or permit to work." *Id.* (citing 29 U.S.C. § 203(g) (quotations omitted)). Accordingly, "the definition of employee under the FLSA is

particularly broad." *Id.* (citing *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) (brackets omitted)).

59.     Individual owners, officers, and/or managers may be liable, along with corporate employer, for FLSA damages to employees. *See, e.g., Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012). ("The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies."). To determine whether an individual or entity is an employer, the court considers whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012) (citing *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir.2010)). At least one of those four elements needs to be present in order to show that an individual is an employer under the FLSA. *Gray*, 673 F.3d at 357.

60.     "The joint employment doctrine treats a worker's employment by joint employers as one employment for purposes of determining compliance with the FLSA's wage and hour requirements." *Seong Song v. JFE Fran., Inc.*, 394 F. Supp. 3d 748, 754–55 (S.D. Tex. 2019) (citing *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 134 (4th Cir. 2017); 29 C.F.R. § 791.2(a) (quotations omitted)). "Under the FLSA, a single worker may stand in the relation of an employee to two or more employers at the same time." *Id.* at 754 (citing 29 C.F.R. § 791.2(a) (quotations and brackets omitted)). "If all the relevant facts establish that those employers are acting entirely independently of each other and are completely disassociated with respect to the employment of the employee, then they are treated as separate and distinct employers. *Id.* (quotation and citation omitted). "On the other hand, if the facts show that employment by one

employer is not completely disassociated from employment by the other employer(s), then they are treated as joint employers." *Id.* (citing 29 C.F.R. § 791.2(a); *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194 (5th Cir. 1983) (recognizing that the term "employer" "has been interpreted to encompass one or more joint employers")).

61.     "Thus, a finding of joint employment requires that the hours an employee works for each joint employer be aggregated for overtime pay purposes and that the joint employers be held jointly and severally liable for any failure to pay proper overtime compensation. *Id.* (citing *Wirtz v. Hebert*, 368 F.2d 139, 141 (5th Cir. 1966); *Mitchell v. John R. Cowley & Bro., Inc.*, 292 F.2d 105, 111–12 (5th Cir. 1961). "Joint employment is construed broadly, and labels and contractual terms used in a particular relationship are largely unimportant." *Id.* "Joint employment is construed broadly, and labels and contractual terms used in a particular relationship are largely unimportant." *Parker v. ABC Debt Relief, Ltd. Co.*, 3:10-CV-1332-P, 2013 WL 371573, at *4 (N.D. Tex. Jan. 28, 2013).

## V.     PLAINTIFF'S CLAIMS

62.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

63.     Plaintiff was employee of BKD Consulting in 2018, 2019, and 2020 pursuant to the FLSA. 29 U.S.C. § 203(e).

64.     Plaintiff was an employee of Ditto in 2018, 2019, and 2020 pursuant to the FLSA. *Gray*, 673 F.3d at 357.

65.     BKD Consulting and Ditto were joint employers of Plaintiff in 2018, 2019, and 2020. *Wirtz*, 368 F.2d at 141.

66.     At times relevant, BKD Consulting is and/or has been an eligible and covered employer under the FLSA relative to Plaintiff's employment with Defendants. 29 U.S.C. § 203(d).

67.     At times relevant, Ditto is and/or has been an eligible and covered employer under the FLSA relative to Plaintiff's employment with Defendants. 29 U.S.C. § 203(d).

68.     At times relevant, BKD Consulting is and/or has been an enterprise engaged in commerce under the FLSA. 29 U.S.C. § 203(s)(1)(A).

69.     Plaintiff was a covered employee under 29 U.S.C. § 206(a) and 29 U.S.C. § 207(a)(1) relative to his employment with Defendants.

70.     Plaintiff routinely and regularly engaged in commerce as an employee of Defendants.

71.     Defendants did not maintain an accurate number of the daily and weekly hours worked by Plaintiff for Defendants. 29 C.F.R. § 516.2(a)(7).

72.     Where the employer does not keep an accurate record of the daily and weekly hours worked by an employee as required by the FLSA, the employee may prove their unpaid overtime hours and damages "as a matter of just and reasonable inference." *Olibas v. Native Oilfield Servs., LLC*, 104 F. Supp. 3d 791, 801 (N.D. Tex. 2015), *aff'd sub nom. Olibas v. Barclay*, 838 F.3d 442 (5th Cir. 2016).

73.     Relative to his work hitches while employed by Defendants, Plaintiff routinely worked in excess of 40 hours per seven-day workweek. However, Defendants did not pay Plaintiff time and one-half his regular rate of pay for all hours worked over 40 in each and every seven-day workweek when Plaintiff worked for Defendants.

74.     The failure of Defendants to pay Plaintiff time and one-half his regular rate of pay for each and every hour worked over 40 in all applicable seven-day workweeks is a violation of the FLSA.

75.     Defendants did not pay Plaintiff at least $7.25 per hour for all hours worked per workweek when dividing the total wages paid to Plaintiff for a workweek by the total hours worked in the corresponding workweek. That is a violation of the FLSA.

76.     Plaintiff alleges that Defendants are jointly and severally liable for his damages in this lawsuit.

77.     Defendants' violations of the FLSA are and/or were willful within the meaning of 29 U.S.C. § 255(a). At all material times, Defendants are and were aware that Plaintiff was not paid time and one-half his regular rate of pay for all hours worked over 40 in each and every seven-day workweek relative to unpaid travel time and improper wage deductions. Ditto made the decision on deductions from Plaintiff's pay for allegedly damaged equipment in addition to making decisions on Plaintiff's methods of pay, rates of pay, and expense reimbursement. Accordingly, Defendants knew and/or had reason to believe that Plaintiff was working overtime hours for which he was not paid all FLSA overtime wage compensation owed. Furthermore, Defendants knew and/or had reason to believe that Plaintiff was not paid the FLSA mandated minimum wage rate when dividing all wages paid Plaintiff for a workweek by all hours worked in that corresponding workweek. Defendants also failed to keep an accurate record of the daily and weekly hours worked by Plaintiff relative to his compensable but unpaid travel time which is further evidence of a willful violation of the FLSA. *See Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 844 (6th Cir. 2002) ("Although the FLSA does not permit an employee to bring a private action for recordkeeping violations, an employer's recordkeeping practices may nonetheless corroborate an employee's claims that the employer acted willfully in failing to compensate for overtime."); *Pye v. Oil States Energy Servs.*, LLC, 233 F. Supp. 3d 541, 565 (W.D. Tex. 2017) (same); *Lackey v.*

*SDT Waste & Debris Servs., LLC*, No. 11-1087, 2014 U.S. Dist. LEXIS 85722, at *13 (E.D. La. June 23, 2014) (same).

78.      Plaintiff seeks all damages available for BKD Consulting's and/or Ditto's failure to timely pay all him all FLSA overtime wages owed.

79.      Plaintiff seeks all damages available for BKD Consulting's and/or Ditto's failure to timely pay all him all minimum wages required by the FLSA.

## VI.      JURY TRIAL DEMAND

80.      Plaintiff demands a trial by jury.

## VII.      DAMAGES AND PRAYER

81.      Plaintiff asks that the Court issue a summons for Defendants to appear and answer, and that Plaintiff be awarded a judgment against Defendants, individually and/or jointly and severally, and/or order(s) from the Court for the following:

     a.  All damages allowed by the FLSA, including unpaid overtime wages and/or unpaid minimum wages,

     b.  Liquidated damages in an amount equal to FLSA unpaid overtime wages and/or FLSA unpaid minimum wages,

     c.  Legal fees,

     d.  Costs,

     e.  Post-judgment interest,

     f.  All other relief to which Plaintiff is justly entitled.

Date: May 14, 2021.

Respectfully submitted,

By:    s/ Allen R. Vaught
Allen R. Vaught
Attorney-In-Charge
TX Bar No. 24004966

*Plaintiff's Original Complaint – Page* 16

Vaught Firm, LLC
1910 Pacific Ave., Suite 9150
Dallas, Texas 75201
(972) 707-7816 – Telephone
(972) 591-4564 – Facsimile
avaught@txlaborlaw.com

ATTORNEY FOR PLAINTIFF